Cole Phillip WALLER, Plaintiff in Error,

v.

Gustina Nell WALLER, Defendant in Error.

No. 41726.

Supreme Court of Oklahoma.

April 9, 1968.

As Corrected April 22, 1968.

Grove & Winters, by Victor W. Pryor, Jr., and Robert G. Grove, Oklahoma City, for plaintiff in error.

Reynolds & Foreman, Norman, for defendant in error.

BLACKBIRD, Justice.

The parties to this appeal were married at Madill, in May, 1959. The oldest of their two daughters, Susan Dianne, was born in December, 1960. Defendant in error, as plaintiff, first divorced plaintiff in error, hereainafter referred to as "defendant", without a contest as far as the record shows, at Lawton in July, 1962. He was still in school and, except for her period of confinement with the baby, she had always been employed to help defray the family's living expenses.

Within six months after that divorce decree was entered, the parties had it set aside and resumed living together.

Not long after this, when plaintiff first became pregnant with their younger daughter, Pattie Kay, defendant came home one night and told her he was unhappy with their marriage and wanted another divorce. He also told her he would support her until the baby was born, with the understanding that she would then file the divorce action and he would leave. Plaintiff did nothing at that time to comply with defendant's stated wish, but continued her employment until defendant was through school and became employed at Tinker Field. Pattie Kay was born in July, 1963, and thereafter plaintiff was employed in private business, and court house, offices in Norman, where the family has resided in recent years.

In 1964, and again in 1965, defendant went to Washington for six weeks training in connection with his work at Tinker Field. When he returned to Norman from the last training period, the parties quarrelled, and plaintiff was hospitalized from taking an overdose of pills.

While plaintiff's petition alleged both extreme cruelty on the part of the defendant, and incompatibility, its prayer asked that she be granted a divorce on the ground of incompatibility only. She also sought custody of the couple's two young daughters, child support for them, the couple's home and household furnishings, and other relief unnecessary to mention.

In defendant's original answer and cross petition, he also alleged that the parties had become incompatible, but asserted that he was "without fault in the premises", and sought custody of the daughters.

Thereafter, while plaintiff was temporarily lodging in Oklahoma City, after her afore-mentioned hospitalization, defendant obtained an order, on his verified application, for temporary custody of the children. Thereafter, in July, 1965, he filed an amended answer and cross petition, which, without referring to his original answer and cross petition, denied that part of plaintiff's petition setting forth her alleged grounds for divorce, prayed that plaintiff take nothing by said petition, and further prayed that he be granted the divorce, after alleging that plaintiff had been guilty of infidelity, extreme cruelty, and gross neglect of duty, and omitting any mention of incompatibility.

On the day the cause came to trial, in August, 1965, plaintiff filed a reply. During the course of her extensive cross examination plaintiff invoked the Fifth Amendment against answering one of defense counsel's general questions referring, in part, to the subject of her marital fidelity, but there was other testimony from which the trial court might reasonably have concluded that she had been no more than gregarious, and perhaps indiscreet, in some of her contacts outside the couple's home.

During the course of defendant's testimony, he indicated that his original idea

was not to oppose the dissolution of the parties' marriage; and at one point in his testimony he stated: "* * * I can't see that there is any other reason in this hearing being held, except for the children."

After the undisputed evidence had indicated that plaintiff had left the little girls at home in the care of baby sitters, to be away with friends at various clubs in Oklahoma County, where alcoholic beverages were consumed, the court interrogated plaintiff rather pointedly and extensively concerning her activities away from home at night, and received assurances to the effect that when she was relieved of the difficulties ("problem", as she put it) of her marriage, she would devote more time to her little girls. After the court had heard several witnesses give testimony pro and con of plaintiff's suitability and fitness to have the little girls' custody, and the parties had rested, the trial court sustained the defendant's special demurrer to the evidence, in so far as it concerned plaintiff's allegations of defendant's mental cruelty toward her, and, after specifically finding that plaintiff had substantiated her allegation of incompatibility, that defendant had failed to establish his alleged grounds for divorce, that plaintiff had recovered from her emotional instability and was then a fit and proper person to have the care and custody of the children, entered its decree granting plaintiff a divorce on the ground of incompatibility, awarding her the custody of the children, with visitation rights in defendant, as well as child support, and a division of property, about which latter, there is no controversy.

Defendant has perfected this appeal, and generally speaking, takes the position that the trial court's granting of the divorce to plaintiff on the ground of incompatibility, and awarding her the custody of the children, is both contrary to law, and clearly against the weight of the evidence.

 Under Subdivision "A)" of defendant's argument he reviews recent decisions pertaining to "incompatibility" beginning with Rakestraw v. Rakestraw, Okl., 345 P.2d 888, and ending with Newman v. Newman, Okl., 391 P.2d 902, to show, among other things, that "incompatibility" is a "two-way street" and must be mutual, or bilateral. He also argues, and seeks to show by reference to portions of the record, that this case can be distinguished from those previous cases in which a divorce, granted on that ground, was upheld on appeal, because, in them, the conflicts between the parties, resulting in their incompatibility, continued until the divorce actions were filed, while here defendant's demeanor, that plaintiff complained of on the witness stand, occurred "two years prior to her bringing this action." Defendant refers to portions of both his, and plaintiff's, testimony in an effort to show that, *after* that time, the parties "were apparently living in blissful harmony" and that they had "reduced their problems of previous years to trivial or imaginary difficulties insufficient to destroy a normal and wholesome matrimonial association * * *". While we would concur in such a conclusion on the basis of considering certain portions of the parties' testimony out of context, we think that, when these portions are considered with the rest of the testimony, it is clear that there are certain factors in the parties' relationship that render their disharmony irreconcilable, and that their relationship has so far deteriorated as to be irremediable. It may be true that for a short period after the parties had their first divorce set aside and resumed living together, and for a longer period after defendant proposed (during plaintiff's second pregnancy) that the parties be divorced again, there was some effort to resolve their differences, resulting in an appearance of harmony, as indicated by plaintiff's testimony that "within the last year" she "didn't fight back with him" because, when she tried to express her feelings and opinions "he would continually twist it around so that I was always the one that was wrong" and she hated

"to be made to feel stupid." But the fact that the couple's harmony was superficial, or "on the surface" only, is indicated by plaintiff's testimony to the effect that he never let her forget she had previously divorced him, by defendant's recurring references, during his testimony, to plaintiff's association with other men at Lawton during the period they were living apart after their first divorce, by the vile and degrading names, or epithets, by which plaintiff testified he referred to her after they went back together and on the night of their last quarrel, by defendant's testimony indicating that he had never forgotten that period of her life (though, on the witness stand, he weakly professed to have forgiven her), and plaintiff's testimony that: "I had wanted to divorce Mr. Waller ever since we got back together, but I didn't, because of the children", and that she had often talked to friends about again divorcing him.

From the testimony, as a whole, it is reasonable to conclude that defendant's memory of the parties' previous separation period has made him suspicious of plaintiff's relations with other men and quick to jump to conclusions from hearsay about her. That he does not have the regard and respect for her that a virtuous wife and mother is entitled to, is an inescapable conclusion from a careful examination and analysis of the record. It may also be reasonably inferred that defendant has no emotional interest in continuing to live with her, and that, fundamentally, he has no objection to being divorced from her. His own testimony under the interrogation of his own, as well as plaintiff's, counsel strongly indicated that his opposition to plaintiff's being granted the divorce, instead of him, may have been based upon legal strategy, and a conception that if the parties' marriage was dissolved because of plaintiff's fault (rather than his) he would stand a better chance of getting custody of the children. Because of "engrained", and irreconcilable, differences between the parties, and what appears to be permanent

disharmony in their relationship, we cannot say that the trial judge's findings and adjudication, as to their incompatibility, is clearly against the weight of the evidence. Defendant does not contend that under Rakestraw v. Rakestraw, supra, and Wegener v. Wegener, Okl., 365 P.2d 728, it was necessary for plaintiff to have been wholly without fault in this matter; and he has failed to demonstrate that granting her the divorce on this ground is contrary to our present statutes, as interpreted and applied in recent decisions. See also Mackey v. Mackey, Okl., 420 P.2d 516.

■ Under Subdivision "C)" of defendant's argument, he complains of the trial court's having sustained plaintiff counsel's objections to his answering certain questions, propounded by his counsel, concerning asserted incidents in plaintiff's life at Lawton about the time of the parties' first divorce and before they had it set aside. His position is that plaintiff has been guilty of similar conduct since resumption of their cohabitation, and such repetition relieved such proffered evidence of the bar of condonation. We find no prejudicial error in the trial court's refusal to allow defendant to answer these questions. An examination of the record discloses that, at other places in his testimony, he testified to essentially the same things, to which these questions were directed. Consequently, if the trial court's refusal to let him answer those particular questions was error, it was harmless under the circumstances. See cases digested in 2A Okl.Dig., under "Appeal and Error",

Under Subdivisions "E)" and "D)" of his brief, defendant contends that the trial court erred in finding that plaintiff was a fit and proper person to have custody of their small daughters, and in awarding her, rather than him, their custody. He 'recognizes that "As between parents adversely claiming the custody" of children of tender years, it should be given to the mother, under Tit. 30 O.S.1961, § 11, if "other things" are equal; but he contends

in substance (referring to certain portions of the evidence) that in this case, the little girls' best interests could not be served equally as well in plaintiff's custody, as in his. The evidence defendant relies upon to support this argument includes testimony which his counsel characterizes as strongly indicating conduct on the part of plaintiff not conducive to a wholesome and moral atmosphere and/or environment for the girls, and other testimony indicating how much they were left with baby sitters, while plaintiff was engaged in social pursuits away from home. Counsel urges this case is analogous to Gilcrease v. Gilcrease, 176 Okl. 237, 54 P.2d 1056, and says that here, as there, the trial court didn't make a finding dispositive of defendant's charges concerning her extramarital activities.

■■■ Counsel's quoted statement ignores the trial court's specific finding that defendant had failed to establish plaintiff's "infidelity", and we assume that this term, as used in said finding, may be interpreted as including the charges referred to. We think the present case is more similar, in most material respects, to Irwin v. Irwin, Okl., 416 P.2d 853, than the Gilcrease Case. In the Irwin Case, where the appellant-husband based much of his argument (that his young son's welfare would not be equally as well served in the mother's custody, as in his) on evidence concerning her past relationship with another man, we concluded, in effect, that there was room for a difference of opinion as to whether there had been anything immoral about that relationship, and we quoted previous opinions to the effect that under § 11, supra, before a mother is deprived of the custody of her children of tender years, it must *clearly appear* that she is an improper person to be entrusted with it. The trial judge's decision as to which of the parents, in the present case, should have custody of the children was probably made more difficult by the uncontradicted evidence that, in any event, the little girls'

care must largely be entrusted to non-related baby sitters. While defendant's testimony indicated that he had stayed with them in the evenings, after returning home from work, during the few weeks' period between the beginning of plaintiff's hospitalization, and the trial, if plaintiff's assurances, in response to the trial judge's questioning, may be relied upon, she will be with them more in the evenings during the future, than she has been in the recent past. And, no more need be said of the testimony of her acquaintances concerning her suitability to have the children's custody, than to characterize it as: "conflicting". Here, as in the Irwin Case, the trial judge let plaintiff know that if, in the future, she does not prove to be a suitable person to have the girls' custody, it can be taken from her. When it is considered that a mother is usually more understanding and capable of coping with the everyday needs of young children of her own sex, than an adult of the opposite sex, we think there is a more compelling reason for not disturbing the trial court's award of custody in this case, than existed in the Irwin Case. And, we are not impressed by defendant's attempt to gain support for his argument, as to plaintiff's suitability, from the temporary emotional instability she suffered from the threats, accusations, and invectives he hurled at her the night of their first confrontation after she had contacted her lawyer about instituting this action, than by some of his brief's other statements hereinbefore referred to.

As we have found in defendant's presentation, and our careful examination of the record, no sound basis for holding the trial court's decree and judgment contrary to law and/or clearly against the weight of the evidence, it is hereby affirmed.

IRWIN, V. C. J., and DAVISON, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.

JACKSON, C. J., concurs in result.

WILLIAMS, J., dissents.