STIFTEL, President Judge.
This is an action for divorce grounded on Incompatibility. It is contested by the wife. The evidence shows that the parties were married on April 19, 1964. He was 44. She was 49. His second. Her third. Each had been divorced from their first spouse. She had been a widow for seven years. She had one adult child. He raised five children. Two girls were still with them. These two young ladies lived with the parties pursuant to a premarital agreement for a while. They were a constant source of tension. Defendant said this was true because of plaintiff’s failure to properly supervise their lives. When they left defendant’s home they still continued as a source of harassment. In fact, defendant didn’t appreciate any of plaintiff’s children, relatives or friends, and was not at all reluctant to tell them.
Defendant was a most suspicious person. Even one hour after their wedding, when she was in a car, she mentioned that the one thing she could never forgive would be his giving attention to another woman. Her past experience may have been some explanation' for her strange and over-worked suspicions. On a delayed honeymoon camping trip to Florida some months after the wedding, she suspected that her husband was out looking for other women and on one occasion suspected a young lady with them on the trip had strange designs on her husband. Still more difficult to explain is her conviction that his employer’s wife had designs on her husband. She tracked him by automobile on one occasion to a suburban railroad station where he met and transported his boss’s wife to her home. The boss knew of the non-mysterious rendezvous, however — in fact, he had asked him to do it. He had asked other employees to do the same on other occasions. Defendant troubled the employer on at least ten occasions about this fanciful affair, and on one occasion, confronted the employer’s wife and demanded that she use someone other than Paul for her transportation thereafter.
When defendant moved from her own home to her husband’s incompletely furnished home in January, 1966, two years after their marriage, there were almost daily arguments, and her high-pitched voice was often heard above the neighborhood din by the next-door neighbor. Defendant was extremely resentful if her husband talked to the woman next door when they met at the hedge in their adjoining yards. In fact, defendant called the neighbor’s husband and asked him to tell his wife not to converse with her husband.
Defendant’s unusual conduct was not without opposition and objective manifestations. Plaintiff managed to wind up in court on more than one occasion, the first *558 occasion as result of an assault and battery charge. The defendant had received a blow to her right eye and was the obvious target for a few other punches. On another occasion she had him arrested for lack of support. He had ideas that he didn’t have to support his wife if she remained at her house after his first major separation from her. She remedied this misconception by moving in with him in January 1966. She lived there with him six months and he was indeed inconsiderate. He failed at first to furnish a sink and a stove and after he finally did purchase them for his incomplete home, he then conveniently omitted to have them properly connected. However, even though there was no usable stove, the parties made use of the pots and pans. They threw them at each other. Mild-mannered Paul failed to see any defects in his conduct, and, of course, defendant thought her conduct was normal and sensible. Of course, as was so true throughout their short married life, neither agreed as to what the other said at the trial. When they were together, disharmony reigned.
This is a “finished” marriage. It is beyond salvage. The deep conflict in the personalities and dispositions of the parties is so evident that it has become impossible for them to continue any semblance of a normal marital relationship. See Colby v. Colby, 283 F.Supp. 150 (Virgin Islands Dist.Ct. 1968).
When a relationship has so irremediably deteriorated because of the bilateral conduct of the parties and where the result is permanent disharmony and the differences irreconcilable, a marriage which has ended in fact should be terminated by law. Waller v. Waller, 439 P.2d 952 (Okl. Supreme Ct. 1968). I conclude from the evidence that the conduct and conflict of personalities of the parties herein have destroyed the legitimate ends of matrimony and the possibility of reconciliation is without hope. Divorce granted on the ground of “Incompatibility”.
Decree Nisi.