**Maxine Dee GORDON, Appellant,**

v.

**Gary Stephen GORDON, Appellee.**

**No. 49371.**

Supreme Court of Oklahoma.

Feb. 7, 1978.

Rehearing Denied April 19, 1978.

---

5.   5 Am.Jur.2d appeal an error § 962 & 963.

Fagin, Hewett, Mathews & Fagin, Arnold D. Fagin, Cliff A. Jones, Legal Intern, Oklahoma City, for appellant.

William B. Rogers, Don D. Laudick, Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, for appellee.

SIMMS, Justice:

In a divorce action, the trial court awarded custody of three-year-old Danny Gordon to his father, Gary Gordon. His mother, Maxine Gordon, now Frank, appeals. We reverse the Trial Court.

Maxine Gordon filed this action for divorce in January of 1975, alleging that through the defendant's fault the parties had become incompatible. She sought custody of Danny, who was then two-years-old; child support; alimony and division of property. By ex parte order, Danny's temporary custody was placed with the plaintiff and defendant was ordered to make payments for the support of plaintiff and the minor child during the pendency of the action.

Defendant answered and denied all plaintiff's material allegations. He also filed a cross-petition seeking divorce for himself and division of property. Several weeks before trial on the issues was held in January of 1976, defendant amended his cross-

petition to request that custody of Danny be placed with him.

The trial court granted divorce to both parties, entered certain orders regarding division of property and alimony, and awarded custody of Danny to defendant. The award of custody is the only issue before us on appeal. For convenience the parties will be referred to by their designation in the trial court.

Testimony pertaining to Danny which is relevant to this appeal can be summarized as follows. Plaintiff had taken care of Danny since his birth. She was not employed and the overwhelming majority of her time was spent at home with him. Testimony revealed that until, and during, the pendency of this action, Danny had been away from plaintiff only a few hours a week. He was enrolled in a music school which met for two hours on two mornings a week and he was cared for by a baby-sitter approximately one to one-and-a-half hours a week while the plaintiff played tennis. During another period of time, not simultaneous with music school, Danny had been in a "mothers' day out" program at a church on Fridays. Other than these periods of time, Danny was constantly with his mother.

The defendant worked six days and at least one night each week in the family business. At the time of trial he lived with his parents who also worked at least six days a week in the family business.

Plaintiff testified that when the parties lived together, the defendant spent no time with Danny. This testimony was not disputed by defendant.

Plaintiff testified that since the parties had separated, Danny visited with his father on Sundays, and that while he liked to go visit his father, he loved to come back home.

The defendant testified that Danny was "thrilled" to see him for visitation periods and that Danny enjoyed those times tremendously.

It was defendant's further testimony that Danny had told him that he didn't want to go home to his mother because he got lonesome when she left him with a babysitter while she played tennis.

Defendant complained on direct examination that plaintiff had refused to allow him to see Danny on certain occasions and, on cross-examination, he requested the court to set out specific times for his visitation periods.

There was no attempt to show that the plaintiff was unfit in any manner to have custody of Danny. In fact, during his opening statement, counsel for defendant declared to the court that:

"The defendant will also ask the Court to award him custody of the minor child of the parties, not on the basis that the plaintiff is an unfit mother because the evidence would not justify that, but that the interest of the minor child would be best served by his residence and custody in his father."

During closing argument, counsel for defendant acknowledged to the court that ". . . Now, I realize there is not a strong case to be made for custody of the child in Gary. I know where the evidence is." And, counsel further stated:

"We would ask at a minimum that the Court direct Mrs. Gordon to remain within the custody of this Court until at least the child is through grade school so that his father can have an opportunity to see his child for whom he is certainly willing to pay support."

These statements, while not evidence, certainly offer an indication of how the parties and their counsel perceived the evidence.

Announcing his judgment, the trial court stated in part that:

"I listened and tried to analyze all of the evidence that I heard in this case and like a lot of cases, I think the evidence is—it's not a question of one party is not fit to have the children.

"* * *

"And I think what what (sic) I heard and putting reasonable inference between the lines, it is my judgment that the best

interest of this child will be served by giving custody of it to the father. I think in the long run with the interest of these people with what I can see, at least what I think I can see deep down in them, I think this little boy will have a better chance. That's going to be my judgment and it will be my ruling. Not that she's unfit; I'm just not too sure that some of the things in her life are a lot more important than some of the things that I think are more important for the benefit of this child . . . I just have a gut feeling that it's going to be the best thing for this child to put custody in his father, from what I've heard. Maybe I'm wrong, I don't know, but that is what I'm supposed to do is what I think."

Post-trial proceedings, regarding the custody of Danny pending this determination on appeal, were held in this Court and before the trial court and Danny is currently in the custody of his father.

Urging reversal of the trial court's award of custody, plaintiff first argues that because Danny is a child of tender years that the court abused its discretion by awarding Danny's custody to defendant in the absence of a showing of unfitness on her part. In support thereof, plaintiff relies on 30 O.S.1971, § 11, which states:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question.

2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father."

Plaintiff cites numerous decisions of this Court[1] decided under 30 O.S.1971, § 11, which set forth the general rule that in this jurisdiction the mother is recognized as the natural and preferred custodian of a child of tender years; that other things being equal, unless the mother is clearly shown to be an improper person to be intrusted with its care and custody, a child should be placed in her custody. The rule further recognizes that a child of tender years needs the constant bestowal of its mother's care and love and that courts are, therefore, loath to deprive a mother of her child's custody where she is a fit and proper person.

Plaintiff further argues that the trial court's finding that Danny's best interests would be served by placing custody in his father is manifestly against the weight of the evidence, and that the trial court therefore abused his discretion.

In support of this argument, plaintiff primarily relies upon the fact that because of defendant's work schedule he must leave Danny in the care of a maid or housekeeper for 90% of the child's waking hours. Plaintiff maintains that the trial court's judgment removed Danny from his mother—the person who had been his primary caretaker since his birth and who was admitted by defendant to be a good mother and a fit and proper person to have Danny's custody—and placed him in the actual care of a person in the employ of defendant whose identity and qualifications were unknown to the court. This result, plaintiff contends, is clearly against the weight of the evidence and is, in fact, detrimental to Dannys best interests.

Plaintiff additionally maintains that the trial court's judgment was obviously against the weight of the evidence as to

1. E. g., Blackwood v. Blackwood, 204 Okl. 317, 229 P.2d 602 (1951); Miracle v. Miracle, Okl., 360 P.2d 712 (1961); Hurt v. Hurt, Okl., 315 P.2d 957 (1957); Earnst v. Earnst, Okl., 418 P.2d 351 (1966); Irwin v. Irwin, Okl., 416 P.2d 853 (1966); Waller v. Waller, Okl., 439 P.2d 952 (1968).

Danny's best interests because testimony showed that because of his personality, defendant would not be the better custodian of Danny. According to plaintiff's testimony, defendant's disposition was certainly less than cheerful. Plaintiff testified that she was seeking a divorce from defendant because, among other things, he was withdrawn and uncommunicative and had a very bad temper. In regard to his temper, plaintiff stated that defendant had ripped up articles of his clothing and had thrust his fist through a closed door.

Defendant argues that the trial court's award of Danny's custody to him was a proper exercise of the court's discretion and that the court's determination that Danny's best interests would be served by this placement is supported by the evidence. Defendant points out that the trial court was able to directly observe the parties and their demeanor and that because of this observation it was better able to decide which parent would be the better custodian. In support thereof defendant relies upon certain testimony presented at trial which, in his opinion, showed plaintiff to be an overly "materialistic" person. Defendant also contends that because the court must be primarily guided by the child's best interests, where the evidence shows that those best interests will be better served by living with the father, the mother need not be shown to be unfit to have custody. Defendant cites and relies upon *Morrow v. Morrow,* Okl., 383 P.2d 24 (1963) and *Brim v. Brim,* Okl.App., 532 P.2d 1403 (1975) to support his contention, that "unfitness" by the mother need not be shown to place custody of a child of tender years with its father.

■ Neither *Morrow, supra,* nor *Brim, supra,* involved an original award of custody. Both cases arose from judgments in motions to modify decree provisions. As a change of custody on a motion to modify presents separate questions and different legal issues than those raised in original custody award actions,[2] those decisions are not controlling here.

Additionally, defendant contends that this Court should not reverse the trial court's award of custody to him in reliance upon the maternal preference provision of 30 O.S.1971, § 11 because that preference is an unconstitutional discrimination against defendant based upon his sex. Defendant submits that the maternal preference for custody of young children denied him, as Danny's father, equal protection of the laws. Defendant argues that gender-based classifications are now "inherently suspect" and must be reviewed under "strict judicial scrutiny". In support of this argument, defendant relies primarily on the recent Supreme Court decisions of *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) and *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

*Reed, Frontiero,* and their progeny[3] do not however, support defendant's contention that gender is now a "suspect" classification for equal protection purposes.

In *Reed,* the Supreme Court struck down a provision of Idaho's probate code which gave a mandatory preference to males over females as executors of decedents' estates although both were otherwise equally entitled to serve. Relying on *Royster Guano Co. v. Virginia,*[4] (a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike"), the Court reviewed the Idaho gender classification under the traditional "rational basis" standard. Finding that the only purpose of the provision was to reduce the workload of probate courts by eliminating hearings on

---

**2.** *Gibbons v. Gibbons,* Okl., 442 P.2d 482 (1968).

**3.** *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

**4.** 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

the merits, the Court held the preference violative of the Equal Protection Clause.

In *Frontiero,* the Supreme Court held that a statutory provision which differentiated between male and female members of the uniformed services as to eligibility for dependents' benefits unconstitutionally discriminated against women in violation of the due process clause of the Fifth Amendment. The Court discussed at length our Nation's "long and unfortunate history of sex discrimination" (Id., 41 U.S. at 684, 93 S.Ct. at 1769) which had, among other injustices, denied women even the most basic civil and political rights—participation in the electoral process and ownership of property. It was "with these considerations in mind" that the Court concluded that "classifications based on sex . . . are inherently suspect, and must therefore be subjected to strict judicial scrutiny." (Id. at 683, 93 S.Ct. at 1768.) The only purpose for the provision, as conceded by the government, was mere administrative convenience, and the Court held that different treatment of male and female military personnel "*solely* for the purpose of achieving administrative convenience" was unconstitutional. (Id. at 690, 93 S.Ct. at 1772.)

It is very important, however, to stress two points about *Frontiero.* First, it was only a plurality opinion as to the holding that sex is a "suspect" classification requiring the stricter standard of review. Second, since *Frontiero,* the Court has retreated from the plurality's analysis of sex as a "suspect" classification and that holding has not been followed in any subsequent decision.

Instead, the Court has fashioned a new "middle-tier" standard of equal protection review under which it has analyzed certain classifications such as gender. While the

existence of this recently evolving third standard is obvious and has received considerable comment,[5] the mechanics of the test's application are not yet clearly developed. Basically, it is a "means focused" ground of review which subjects certain classifications, such as gender, to a more critical examination than they would receive under the deferential lower-tier "rational basis" test but, being less stringent than the upper-tier "strict scrutiny" review, it relieves the judiciary of making the numerous value judgments inherent in that analysis.

The most recent, and by far the strongest, enunciation of this "middle-tier" standard is found in *Craig v. Boren, supra,* where the Court struck down Oklahoma's age-sex differential for sale of 3.2 beer. Obviously expanding the "rational relationship" standard of *Reed,* the Court declared that:

"Classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives."[6]

■ Clearly then defendant is not correct in his contention that gender is currently a "suspect" classification for equal protection purposes.

■ Under even the heightened review required by middle-tier analysis, our maternal preference custody provision of 30 O.S. 1971, § 11 is constitutional.

This is not a situation like *Reed* or *Frontiero* where the sole purpose for the classification is administrative convenience. Here, on the contrary, the classification serves the undisputedly important objective of assuring that children whose parents have severed their marriage relationship, will be placed in the custody of that parent most

---

**5.** See e. g. The Supreme Court 1971 Term-Forward, 86 Harv.L.Rev. 1 (1972); Wilkinson, The Supreme Court, The Equal Protection Clause, and the Three Faces of Constitutional Equality, 61 Va.L.Rev. 945 (1975); Nowak, Realigning the Standards of Review under the Equal Protection Guarantee-Prohibited, Neutral and Permissive Classifications, 62 Geo.L.J. 1071 (1974); See also, *Craig v. Boren, supra,* 429

U.S. 210–228, 97 S.Ct. 463–473, 50 L.Ed.2d 415–426 (Powell, J. and Stevens, J., Concurring Opinions; Burger, C. J. and Rehnquist, J., Dissenting Opinions; *Wright v. Keiser,* Okl., 568 P.2d 1262, 1268 (1977) (Lavender, J., Dissenting Opinion).

**6.** 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407.

apt to provide them with the best care and protection. Neither party challenges the importance of the State's interest in providing for the welfare of its minor citizens, nor questions the legitimacy of the State's involvement in this decision making process.

We are of the opinion that the gender-based means chosen by our Legislature are substantially related to this important objective and the classification scheme is constitutional. It is indeed an old notion that a child of tender years needs a mother more than a father, but defendant has not persuaded us that this notion is either unsound or unconstitutional. We believe that consideration of the cultural, psychological and emotional characteristics that are gender related make this custodial preference one of "those instances where the sex-centered generalization actually [comports] to fact." *Craig v. Boren, supra,* 429 U.S. at 199, 97 S.Ct. at 458, 50 L.Ed.2d at 408. The statute's additional provision that children who are of an age to require education and preparation for labor or business should be placed in the father's custody further reinforces our decision. This provision makes clear the essential fact that this statute is not concerned entirely with the "rights" of parents to their children. In addition to, and far beyond, their rights, the paramount purpose of the statute is to serve the welfare and best interests of children.

We agree with the reasoning of the Supreme Court of Utah in their recent decision of *Cox v. Cox,* Utah, 532 P.2d 994, 996 (1975). There a father of young children challenged the court's award of custody to their mother, supporting his appeal upon the additional authority of Utah's "equal rights" amendment. The Court shared his view that mothers have no "absolute or invariable right" to custody and that fathers' rights and interests are entitled to equal and just consideration. The Court stressed however, that this equality of consideration "does not mean that the law must pretend to be unaware of and blindly ignore obvious and essential biological differences." In light of the statute's primary concern—the welfare and adjustment of children—the Court found that "there is

wisdom in the traditional patterns of thought that the roles of the mother and father in the family are such that, all other things being comparatively equal, the children should be in the care of their mother, especially so children of younger years; and that this may be true even where the divorce is granted to the father."

■ There is nothing within this statute which prohibits a judge from placing a child, regardless of his or her age, with the father where the evidence supports a finding that the father will be the better custodian and paternal custody will serve the child's best interests.

■ The gender preferences of 30 O.S. 1971, § 11, are intended to direct the trial court's determination of custody only when the scales are relatively balanced between the attributes of both parents, and the statute should be used only in such a situation.

If the Legislature should determine that our contemporary social structure demands a change in the traditional family roles that have been part of our culture since its beginning, they may enact legislation reflecting that change. Meanwhile, the expression of those roles as embodied in 30 O.S. 1971, § 11, is not unconstitutional.

■ The evidence in this case did not support the trial court's finding that Danny's welfare and best interests would be best served by placing his custody with his father, the defendant. Plaintiff was shown to be a fit and proper person to have Danny's custody and the award of custody to defendant was clearly against the weight of the evidence. The trial court did, as urged by plaintiff, abuse his discretion by ordering Danny's custody placed with his father rather than with his mother, as directed by 30 O.S.1971, § 11. *Blackwood v. Blackwood,* Okl., 229 P.2d 602 (1951); *Waller v. Waller,* Okl., 439 P.2d 952 (1968).

■ As discussed above, certain post-trial proceedings regarding Danny's custody pending the outcome of this appeal were held both in this Court and in the trial court. In an effort to eliminate the possi-

bility of future litigation arising by reason of the Special Master's findings regarding Danny's custody pending this appeal, we take this opportunity to expressly find that the issues raised and litigated at that hearing are now moot. In this appeal from the divorce decree we are not concerned with whether the Special Master's award of temporary custody to defendant was correct based upon the facts presented at that time and we are of the opinion that any further consideration of those facts by the trial court would be irrelevant and unnecessary.

We REVERSE AND REMAND WITH INSTRUCTIONS to place Danny in the custody of his mother and to hold further hearings to determine the issues of the father's visitation periods and the amount of child support.

HODGES, C. J., and IRWIN, BERRY and DOOLIN, JJ., concur.

BARNES, J., concurs in part, dissents in part.

WILLIAMS, J., joins with BARNES, J.

LAVENDER, V. C. J., dissents.

BARNES, Justice, concurring in part and dissenting in part:

I concur in that part of the opinion which holds that 30 O.S.1971, § 11, is constitutional. I dissent to that part of the opinion which finds that the evidence in this case did not support the Trial Court's finding that the child's best interest would be best served by placing his custody with the father.

I am authorized to state that Justice Williams concurs in the views herein expressed.