Byron McFALL and M. W. Brooks, and others similarly situated, Appellants,

v.

The CITY OF SHAWNEE, a Municipal Corporation, Appellee.

No. 47754.

Supreme Court of Oklahoma.

Dec. 7, 1976.

Rehearing Denied Feb. 9, 1977.

Jerry D. Sokolosky, Sokolosky & Becker, Oklahoma City, for appellants.

Paul McKinney, Shawnee, for appellee.

IRWIN, Justice:

Twin Lakes were constructed by the City of Shawnee (City) on city owned land in 1935 as a combination municipal water supply and recreational facility. City subdivided part of the lakeside property into lots and has leased them for a specified rental for five-year terms with options to renew for additional five-year terms. Recently, City by ordinance fixed the rentals at twenty-five ($25.00) per year for lessees who are residents of City and one hundred dollars ($100.00) per year for nonresident lessees.

Nonresident lessees (appellants) brought suit to enjoin the collection of the additional seventy-five dollars ($75.00) per year charged them for being nonresident lessees. Appellants sought to obviate the additional rental charge on grounds that the higher rate violated their rights under the equal protection clause of the XIV Amendment of the United States Constitution; Art. V, § 59 and Art. X, § 5, of the Oklahoma Constitution and 68 O.S.1971, § 2701. The trial court upheld the ordinance imposing the higher rentals on appellants by general judgment without recital of reasons.

The Court of Appeals, Div. No. 2, determined that any distinction in rentals to lessees as a class was irrational and arbitrary as a matter of law when the only basis therefor was residency and reversed the judgment of the trial court and remanded with directions to enter judgment for appellants. City filed its Petition for Certiorari.

■ Without question the rentals charged are not in fact rent, rather the charge is more properly a fee levied on the right to occupy lakeside property. The "rentals" do not now and have never approximated the fair rental value of the lots. The express purpose of City's ordinance is "to more nearly equalize the payments of lakeside leaseholders in the operation and maintenance of the lake facilities  ." City expends approximately $40,000.00 per year on the lakes, recreational facilities and related municipal services to the area. The fee increase was intended to apportion to the approximately one hundred nonresident lessees, one-fourth of the total direct and indirect operating costs of the lakes.

All the constitutional provisions and statutes relied upon by appellants require that taxes be uniform throughout the class of subjects taxed. Appellants argue that the subjects on which the fee are charged are the lakeside lots, and City contends that the classes of subjects charged the fees are residents and nonresidents. It is agreed that if the class is the lakeside lots, there is no rational distinction between the lots on which to base the rate discrimination.

■ Municipalities are precluded from taxing an individual's interest in real property. 68 O.S.1971, § 2701. No characteristic of any particular lakeside lot engenders the additional $75.00 charge. Appellants are subject to the additional charge solely because they are not residents of City. The classification is based purely on residency.

■ The fee in this case is on the use and enjoyment of certain municipal facilities and services. Persons may be grouped into different classifications for governmental purposes so long as the basis for the classifications abridge no fundamental right of the persons classified and there is some rational basis for the distinction. *Miller v. Sears, Roebuck & Co.,* Okl., 550 P.2d 1330 (1976); *San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

At no point do appellants assert that City's ordinance distinguishing between residents and nonresidents, deprives them of any fundamental right explicitly or implicitly guaranteed by the Constitutions of our State or Nation. Appellants quite simply argue that classifications based on residency are per se unconstitutional along the same lines as classifications based on race. In the alternative, appellants suggest the absence of some rational correlation between the extra amount charged them and the contributions of residents to the maintenance of Twin Lakes.

On occasion, residency requirements have been stricken down, not because residency

classifications are per se unconstitutional, but because the imposition of a durational residency requirement as a prerequisite to the enjoyment of certain benefits precluded or chilled the exercise of protected rights. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Where residency or the lack thereof has been the only distinguishing characteristic of the classification and no fundamental right suffers because of the classification, the distinction has been upheld. *American Commuters Asso. v. Levitt,* 405 F.2d 1148 (2nd Cir. 1969). The courts have upheld higher tuition rates for nonresident students than for resident students. *Clarke v. Redeker,* 259 F.Supp. 117 (C.C.Iowa 1966) aff'd 406 F.2d 883 (8th Cir. Iowa), cert. den. 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 115 (1969); cf. *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In *Clarke v. Redeker,* supra, the opinion of the three judge panel concluded that no fundamental rights were abrogated by separate classifications for residents and nonresidents as a basis for establishing tuition fees. Under such circumstances, the District Court applied the rational basis test to ascertain the constitutional validity of the classification. The opinion of the three judge court states:

"The students [of] SUI [State University of Iowa] who are classified as nonresidents are charged a higher tuition than resident students. The defendants justify the discrimination primarily on the basis that resident students or their parents pay taxes to the State of Iowa which, in turn, supports and maintains SUI. The higher tuition charged nonresident students tends to distribute more evenly the cost of operating and supporting SUI between residents and nonresidents attending the University. Although there is no way for this Court to determine the degree to which the higher tuition charge equalizes the educational cost of residents and nonresidents, it appears to be a reasonable attempt to achieve a partial cost equalization. The regulation classifying students as resi-

dents or nonresidents for tuition payment purposes is not arbitrary or unreasonable and bears a rational relation to Iowa's object and purpose of financing, operating and maintaining its educational institutions."

As to appellants' alternative argument suggesting the absence of some rational relation to City's stated objective of equalizing contributions between residents and nonresidents, another line of cases is analogous to the present controversy. Due to the flight of inner city residents to suburban localities, a number of major metropolitan areas have attempted to abate the decline in their tax base by enacting ordinances known generally as "commuter taxes". The commuter tax imposes a tax on the income of nonresidents who are regularly employed or conduct businesses in the city. While municipalities in Oklahoma are precluded by statute from enacting nonresident income taxes, 68 O.S.1971, § 2701, the legal and factual parallels are instructive to the present problem. The rationale of the commuter tax is that for substantial periods of time every year nonresidents use and enjoy municipal facilities and services without significant contribution to the creation and upkeep of these same facilities and services. Consequently, commuting nonresidents are taxed a percentage of the income earned from occupations and businesses within the municipality.

An annotation in 48 ALR 3d 343, in discussing the validity of a commuters tax states:

" * * *, a number of cases have upheld the validity of municipal income tax ordinances as applied to nonresidents of the municipality, and, although few in number, such cases have at least touched on a variety of issues. Thus there is authority that the test of whether such an ordinance violates due process is whether or not the taxing authority has given anything to the nonresident taxpayers for which it can ask a return; and several of the cases which have applied this test have found that the protection and other benefits provided to such tax-

payers and their employers by the city were sufficient to justify the tax, the most common benefits cited by the courts being police and fire protection and use of streets and other public areas. The validity of such ordinances has also been upheld over contentions that they contravened particular provisions of the Federal Constitution, such as the privileges and immunities or equal protection guaranties, or the commerce clause. In addition, such an ordinance has been upheld as against the contentions that it failed to comply with the state enabling legislation, or impaired the legal effect of a taxpaying nonresident's employment contract, or that it discriminated in favor of nonresidents of the city who came to the city for various reasons other than to work, and who consequently, because they earned no income in the city, were not subject to its wage tax.  *  *  *."

Appellants argue there is no rational basis for the amount of the fee assessed to the nonresident and the amount assessed to the resident lessee. City asserts as a rational basis for the difference is the substantial disparity between the contributions of the nonresidents and residents to the upkeep of the lakes and related services. City points out that the traditional deficit in its lake operations are made up from the general revenues derived from taxes paid by residents.

■ Appellants have challenged the constitutionality of the ordinance which is presumptively constitutional. *Botchlett v. City of Bethany,* Okl., 416 P.2d 613 (1966). Speaking to the burden of establishing its invalidity, 56 Am.Jur.2d Municipal Corporations § 381, states:

"As in other cases of attacks upon the validity of legislation, where a municipal ordinance is attacked upon the grounds of unreasonableness or unconstitutionality, the burden is on the person alleging its invalidity to establish that fact. This principle is applicable where one assails the classification made by an ordinance. The principle is sometimes stated in the form that if an ordinance is not inherent-

ly unfair, unreasonable, or oppressive, a person attacking it must assume the burden of affirmatively showing that as applied to him it is unreasonable, unfair, and oppressive. Hence, where an ordinance is not void upon its face, but its invalidity is dependent upon facts, it is incumbent upon the party relying upon the invalidity to aver and prove the facts which make it so.  *  *  *."

■ There is nothing inherently unfair, unreasonable, or oppressive in the ordinance assessing the lake fees for resident and nonresident lessees. Appellants failed to offer any evidence demonstrating the absence of a rational relation between the additional fee assessed them and the contributions of residents to the upkeep of the lakes and related services. The trial court's general judgment for City necessarily includes a finding that appellants did not sustain their burden of proof. The judgment of the trial court should be affirmed.

Certiorari granted; Opinion of the Court of Appeals vacated; and Judgment of the trial court affirmed.

WILLIAMS, C. J., and DAVISON, BERRY, LAVENDER, BARNES and SIMMS, JJ., concur.

DOOLIN, J., concurs in results.