**Donna Janell ROBERTS, Appellant,**

v.

**David Lavern ROBERTS, Appellee.**

**No. 55069.**

Supreme Court of Oklahoma.

Jan. 11, 1983.

---

**6.** 12 O.S.1981 § 1277.

**7.** *Independent School District # 89 of Oklahoma County v. Oklahoma City Federation of Teachers,* Okl., 612 P.2d 719, 724 [1980].

Jack Winn, Williams, Landman & Savage, Tulsa, for appellant.

Ralph R. Adkisson, Smith, Brown, Martin, Adkisson & Birmingham, Tulsa, for appellee.

DOOLIN, Justice:

Appellant challenges the constitutionality of 12 O.S.Supp.1979, § 1289(D)[1] which makes the voluntary cohabitation of a former spouse with a member of the opposite sex a ground for reducing or terminating support alimony.

Parties were granted a divorce October 26, 1979, with appellee ordered to pay a total of $10,000.00 in support alimony in three payments: $2,000.00 at the time of the divorce decree, $3,000.00 on December 20, 1979 and $5,000.00 on or before March 26, 1980.

Appellee made the first payment on December 26, 1979; he filed a motion to modify the divorce decree by terminating the other alimony payments. On March 26, 1980 the trial court granted appellee's motion and terminated the final two alimony payments, one due before the filing of the motion and the other one due after the granting of the motion.

Appellant attacks the constitutionality of the statute as violative of equal protection and due process because (1) the statute does not allow a party the right to seek an increase in support alimony upon a showing of substantial change of condition and (2) the described cohabitation penalizes only the recipient of alimony, not the other spouse who also engages in such conduct. Appellant also alleges the trial court erred in finding a "substantial change of circumstances," warranting termination of support alimony and also erred in finding that a "private conjugal relationship" existed.

Appellant cites only two cases as authority for her constitutional challenge. One case[2] simply offers a definition of "alimony" which is of no help here. The second case[3] offers wisdom from New York State that "even immoral conduct will not permit the court to make a modification unless the type of conduct engaged in is contemplated by the statutory language ... the power to modify a provision for alimony is only such as is conferred by statute ...." We find such language is of little assistance to appellant in light of our statute.

The *raison d'etre* of § 1289(D) is not to regulate morality, but rather to regulate support maintenance when the *need* for continued support has diminished or vanished. Aside from voluntary cohabitation, there must be present, and proved, a "substantial change of circumstances relating to *need* for support or ability to support."

A judgment in a divorce suit may only be modified or vacated under one of

1. 12 O.S.Supp.1979, § 1289(D): "The voluntary cohabitation of a former spouse with a member of the opposite sex shall be a ground to modify provisions of a final judgment or order for alimony as support. If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have jurisdiction to reduce or terminate support payments upon proof of substantial change of circumstances relating to need for support or ability to support. As used herein, cohabitation shall mean the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law, or not necessarily meeting all the standards of a common-law marriage. The petitioner shall make application for modification and shall follow notification procedures as used in other divorce decree modification actions. The court that entered the divorce decree shall have jurisdiction over the modification application."

2. *Poloke v. Poloke,* 37 Okla. 70, 130 P. 535 (Okla.1913).

3. *Northrup v. Northrup,* 43 N.Y.2d 566, 402 N.Y.S.2d 997, 373 N.E.2d 1221 (N.Y.1978).

the statutory provisions enumerating situations wherein the trial court is granted such power, unless it is held to be a void judgment. *Fisher v. Fisher,* 558 P.2d 391 (Okla. 1976). We have held that where alimony has been allowed to a wife in a divorce decree, the court has no power on subsequent application to increase or diminish the allowance given in the original judgment without statutory authority. *Funnell v. Funnell,* 584 P.2d 1319 (Okla.1978); *Fisher v. Fisher, supra.*

We find nothing unconstitutional in § 1289(D). To argue the giver of support alimony should be penalized for engaging in voluntary cohabitation is ludicrous; what possible bearing would that have on the need for support of the recipient spouse? Support alimony is a final judgment; it can be neither increased nor decreased absent specific statutory authority. We find nothing constitutionally infirm in a statute which provides for a decrease in support alimony, and as appellant can point us to no authority to support her argument, we dismiss it.

Appellant's final propositions of error argue there was insufficient evidence to find "cohabitation," "a private conjugal relationship" and "a substantial change in circumstances."

The trial court spent considerable time examining the evidence and listening to the witnesses and absent an abuse of discretion this Court will not reverse a discretionary decision by a trial court based on the evidence. *Walker v. Walker,* 140 Okla. 1, 282 P. 361 (1929); *Hughes v. Hughes,* 363 P.2d 155 (Okla.1961).

AFFIRMED.

HODGES, LAVENDER and HARGRAVE, JJ., concur.

BARNES, C.J., and OPALA, J., concur and file separate opinions.

SIMMS, V.C.J., and IRWIN and WILSON, JJ., dissent.

BARNES, Chief Justice, concurring specially:

I agree with the majority opinion, but I concur for the specific reason that it appears that the legislature, by enacting 12 O.S.Supp.1979 § 1289(D), sought to remove the impetus that existed under § 1289(A) and (B) for an alimony recipient to remain unmarried, even while cohabiting, in order to avoid statutorily-imposed loss of support alimony. It is well established that public policy favors marriage and frowns upon statutes which act to restrain or discourage the marital relationship. It was essential for the legislature to enact § 1289(D) because prior to its enactment, cohabiting recipients found that it was financially detrimental for them to marry (and thus lose support alimony), while those who married were automatically (with certain exceptions) removed from recipient status. With the enactment of 12 O.S.Supp.1979 § 1289(D), the law is equally and equitably applied to both those recipients who marry and those who do not. The law no longer serves as an impetus to discourage or encourage marriage of support recipients, but relies solely, in both cases on true financial need of the parties.

I am authorized to state that OPALA, J., joins me in this Concurring Specially opinion.

OPALA, Justice, concurring:

Under challenge in this appeal is the constitutional validity of 12 O.S.1981 § 1289D [1] whose provisions make *nonmarital cohabita-*

1. The provisions of § 1289D are:

"*The voluntary cohabitation of a former spouse with a member of the opposite sex shall be a ground to modify provisions of a final judgment or order for alimony as support.* If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have *jurisdiction to reduce or terminate support payments upon proof of substantial*

*change of circumstances relating to need for support or ability to support.* As used herein, cohabitation shall mean the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law, or not necessarily meeting all the standards of a common-law marriage. * * *" [Emphasis added].

tion a ground for *downward modification* of a decree-imposed *alimony award.*[2] The attack is narrowly anchored on *invidious underinclusion.* Appellant urges that the statute in contest violates the Equal Protection Clause by "penalizing" cohabitation of alimony recipients without subjecting to similar economic disadvantage those alimony obligors who live in the same lifestyle. While I concur in the court's decision that § 1289D is free from the infirmity sought to be ascribed to its terms, I write separately to add a few observations.

## I.

### APPELLANT'S CLAIM THAT § 1289D IS INVIDIOUSLY UNDER-INCLUSIVE

The vice of underinclusion—in the Equal Protection sense—stems from the legislative use of an impermissible classification.[3] It is not present here.

"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of legislation, so that all persons similarly circumstanced shall be treated alike'."[4] The enactment challenged here does not rest on an impermissible classification scheme. It bears a rational relationship to a legitimate state objective of affording alimony obligors a form of relief against *economically emancipated recipients*

*living in a nonmarital menage* which is akin to that available against *remarried recipients.* The legislative scheme adopted by § 1289D provides *similar* treatment for *married and unmarried* alimony obligees who are *similarly situated.*[5]

*Unmarried* alimony recipients living in a common household with a non-spousal mate as a single economic unit are left by § 1289D *in no worse* jural or economic position than *remarried* alimony recipients. Oklahoma law, 12 O.S.1981 § 1289B, makes alimony terminable on remarriage of the recipient unless proper and timely showing is made "that some amount of support is still needed and that circumstances have not rendered [continued] payment . . . inequitable."[6] The test for judicial assessment of a recipient's post-remarriage support need is strikingly similar to that fashioned for the cohabiting recipient. The latter may also qualify for continued alimony receipt "upon proof . . . relating to need for support . . . ." 12 O.S.1981 § 1289D.

The states are *not* restricted by the Federal Constitution from either reducing or terminating an alimony award *before* its recipient enters into another matrimonial venture that is legally "foolproof". They are free to decide, based on their own policy, whether an event that falls short of legal remarriage will nonetheless afford a ground for relief from the adjudicated alimony obligation.[7] Cohabitation in a non-

2. In our statutory and decisional law the canonical term "alimony" is used to denote three distinct classes of monetary awards in matrimonial litigation: (1) support allowance in a decree of separate maintenance, called "alimony without divorce", 12 O.S.1981 §§ 1275 and 1284; (2) support allowance made while matrimonial contest is in progress, called "alimony *pendente lite*", 12 O.S.1981 § 1276; *Jones v. Jones,* Okl., 612 P.2d 266, 268 [1980]; and (3) support allowance that follows the dissolution of marriage, called "support alimony", 12 O.S. 1981 §§ 1278 and 1289; see *Hughes v. Hughes,* Okl., 363 P.2d 155, 157 [1961]. *The statute here under challenge deals solely with the third category of alimony.*

3. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 [1979].

4. *Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 [1972]; *Roy-*

*ster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 [1920].

5. Disparate treatment for married and unmarried persons who are similarly situated was condemned in *Eisenstadt v. Baird,* supra note 4, at 1039, and *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 544, 93 S.Ct. 2821, 2831, 37 L.Ed.2d 782 [1973]; cf. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 [1974].

6. *Dickason v. Dickason,* Okl., 607 P.2d 674 [1980].

7. *Sutton v. Leib,* 342 U.S. 402, 72 S.Ct. 398, 403, 96 L.Ed. 448 [1952]. Many states treat an annulment of the alimony recipient's remarriage as "divorce" and prohibit reinstatement of the terminated alimony obligation of the previous spouse. *Hodges v. Hodges,* Ariz.App.,

matrimonial setting is usually a reliable external indicator of a newly-formed relationship which—more often than not—spells a change in economic circumstances and hence—for alimony modification purposes— may be treated on a footing similar to remarriage. *Cohabitation is not a basis for, and will not justify, modification under § 1289D unless it is accompanied by "changed circumstances" that manifest the presence of economic interdependence within the common non-spousal menage.*[8] *When these elements are present, the relationship is to be viewed as a de facto remarriage.*[9]

Because our statute allows alimony modification not only upon remarriage but also on a showing of obligee's economic involvement in a home-centered nonmarital union, the Oklahoma obligor is provided with the opportunity for reduction or termination relief against a broader class of recipients— those who either *de jure* or *de facto* become economically interdependent with a new co-resident mate.[10] The fact that alimony recipients standing in an economic alliance with a nonmarital partner who does not live in a common household were not brought within the vulnerable class of obligees does not make the statutory classification scheme fatally underinclusive. Economic and social legislation with respect to which the legislature has drawn lines in the exercise of its discretion will be upheld if it is reasonable, not arbitrary, and bears a rational relationship to a permissible state object.[11] Nor is the challenged statute invidiously discriminatory because it does not permit an increase of alimony against obligors who cohabit. Oklahoma prohibits, with even-handed consistency, any post-divorce upward modification of the adjudicated spousal support burden.[12] Moreover, punishing cohabitation as a sexual offense—by the sanction of withholding or escalating alimony on moral grounds—cannot be said to be either the intent or the effect of § 1289D. Its terms merely establish a new modification procedure that places the alimony recipient with a *de facto* spouse in a substantially similar legal position to one who has a *de jure* mate. The enactment's focus is neither on the recipient's nor on the obligor's *personal lifestyle.* The court's inquiry centers on the *change,* if any, in the recipient's *economic* status and on the *need* for continuing support from the dissolved union's obligor. Assuming for argument's sake that any unmarried couple has constitutionally shielded freedom to share living quarters,[13] the statute under challenge here is nonetheless free from fundamental infirmity. It does not single out persons living in a common non-spousal menage for a treatment different from that which the law accords to married persons similarly situated. The court's pronouncement wisely refrains from exploring here the full breadth of protection affordable by

118 Ariz. 572, 578 P.2d 1001, 1005 [1978]; Annot., 45 A.L.R.3d 1033 [1972].

**8.** "Changed circumstances" which manifest the presence of economic interdependence (through the pooling of common resources) may occur within a cohabitational menage in two different situations: (1) when the cohabiting mate does contribute to the alimony recipient's support or (2) when such mate does not contribute his/her share of expenses. See, e.g., *Garlinger v. Garlinger,* 137 N.J. 56, 347 A.2d 799 [1975]. The so-called *Garlinger* test is discussed in *The Effect of Third Party Cohabitation on Alimony Payments,* 15 Tulsa L. Journal 772, 779 [1980].

**9.** *Smith v. Smith,* Okl., 652 P.2d 297, 299 [1982] (Opala, J., concurring).

**10.** The familiar tort rule, followed in Oklahoma, that the tortfeasor cannot diminish an injured plaintiff's claim by the amount of loss compensated for a "collateral source" has no application to an adjudicated alimony obligation. See *Kimery v. Public Service Company of Oklahoma,* Okl., 562 P.2d 858 [1977]. Because of their potential for providing a collateral source of support, both remarriage and economic interdependence status with a cohabiting non-spousal mate are explicitly instituted as statutory modification-triggering devices. 12 O.S. 1981 § 1289.

**11.** *Village of Belle Terre v. Boraas,* supra note 5, at 1540; *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 [1971].

**12.** *Hughes v. Hughes,* supra note 2.

**13.** See cases cited supra note 5.

our fundamental law to the erotic pursuits of unmarried alimony recipients. Inasmuch as § 1289D neither prescribes nor imposes a norm of moral conduct, that question is not before us.[14]

## II.

## STANDARDS IN DETERMINING A COHABITING RECIPIENT'S NEED FOR CONTINUED ALIMONY

The court does not address itself to, nor pronounce, the standards trial courts should use in gauging a cohabiting recipient's need for continued alimony. That issue is not before us. Appellant does not argue that an improper test was in fact applied.

## III.

## MAY AN ALIMONY AWARD BE MODI-FIED BY REDUCTION OR TERMI-NATION OF INSTALLMENTS THAT ACCRUED BEFORE APPLICATION FOR RELIEF WAS FILED?

Neither does the court's opinion address itself here to the trial court's power to effect termination or reduction of alimony payments accrued before the application for relief was filed. That issue must stand unsettled because it was not raised either here or below.[15]

I am authorized to state that BARNES, C.J., concurs in my views.

SIMMS, Vice Chief Justice, dissenting.

I dissent. I believe the statute is violative of due process and equal protection guarantees of the state and federal constitutions, and the majority opinion has not persuaded me otherwise.

Donna Roberts has a valid, final and otherwise enforceable judgment for support alimony. The State of Oklahoma, through enactment of § 1289(D), has declared her rights in that judgment "lost" due to her sexual conduct and living arrangement. That conduct was lawful and occurred in the privacy of her home, in a living arrangement which was also lawful.

We are not confronted here with a trivial question. Unquestionably Donna Roberts' conduct and living arrangement are constitutionally protected. She has, as we all do, fundamental rights of privacy and freedom of expression and association surrounding and protecting her home and private behavior therein. See, e.g., *Griswold v. Connecticut*, 381 U.S. 479, 14 L.Ed.2d 510, 85 S.Ct. 1678 (1965); *Stanley v. Georgia*, 394 U.S. 557, 22 L.Ed.2d 542, 89 S.Ct. 1243 (1969); *Eisenstadt v. Baird*, 405 U.S. 438, 31 L.Ed.2d 349, 92 S.Ct. 1029 (1972); *Moore v. City of Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

This statute clearly conflicts with, and infringes upon, these fundamental freedoms. Appellant, and others in like circumstances, are penalized by this provision in the exercise of their rights to privacy, and freedom of association in their own homes for behavior which is lawful and wholly unrelated to the purpose of alimony for support.

Alimony for support is based on a showing of need for continued support and main-

---

**14.** There is *no* basis in § 1289D—or in any source of legislative history *dehors* the statutory text—for suggesting that its objective was to impose on unmarried alimony recipients a code of sexual morality after the fashion of the ecclesiastical law's command clause requiring that following a divorce *a mensa et thoro* (separate maintenance) the separately maintained wife continues eligible for support (alimony without divorce) *dum sola et casta vixerit* (so

long as she lives alone and remains chaste). See comments in *The Effect of Third Party Cohabitation on Alimony Payments*, 15 Tulsa L. Journal 772, 776 [1980].

**15.** Oklahoma case law prohibits retroactive modification of child support orders. *Reynolds v. Reynolds*, 192 Okl. 564, 137 P.2d 914, 916 [1943].

tenance. It serves the dual purposes of equitably providing for the recipient's financial interests and protecting society from the potential burden of destitute divorcees being placed on the relief rolls.

Oklahoma is not among the jurisdictions which allow subsequent modification of alimony.

Prior to the enactment of the section in question, support alimony was subject to termination for only two events, both related to need: death or remarriage of the recipient.[1] Death clearly ends the need for support. Remarriage has a legal connecting link with need, as the new spouse has formed a legal relationship and assumed the legal duty of support.[2] Even with a new marriage however, the recipient may, within 90 days, attempt to show that some amount of support is needed and would not be inequitable.

Except for these provisions, alimony judgments formerly were not subject to modification once they became final. This was true even though due to subsequent events, equitable considerations might weigh heavily on the side of the payor spouse.[3]

The majority stumbles in its attempt to shore up the statute's validity as being concerned with need rather than sexual conduct. The fault is not the author's for it is impossible to do.

The provision is not concerned with need, but sexual conduct: voluntary cohabitation with a member of the opposite sex. That relationship is defined as "the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship" which is neither a common law nor a ceremonial marriage.[4]

This section of the statute arbitrarily creates a classification of persons who, by reason of certain sexual conduct, may have

their otherwise nonmodifiable and nonterminable judgments terminated or modified. On its face the legislation creates a classification unrelated to the purpose of support alimony.

Cohabitation is the explicit statutory ground for modification and it is the only fact which needs to be alleged in the motion. Efforts to save the statute by reliance on the provision that the court "shall reduce or terminate support payments upon proof of substantial change of circumstances relating to need for support", are futile, for the next words of the statute are "or ability to support".

While a payor spouse's change of circumstances relating to his ability to support are irrelevant in all other situations, because the purpose of support alimony is the need of the recipient, in cohabitation cases the issue assumes sudden relevance.

I have no hesitation in saying that I do not believe there is any rational relationship between the conduct proscribed by § 1289(D) and the purpose of support alimony.

Because of the fundamental rights involved, the section could be justified only by a "compelling state interest". See, e.g., *Griswold v. Connecticut, supra.*

Inasmuch as I do not believe the classification satisfies even the more lenient rational relationship standard, it is unnecessary to address the compelling state interest test.

Traditional application of the Equal Protection Clause denies government "the power to legislate that different treatment be accorded to persons placed by statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and sub-

---

1. 12 O.S.1971, § 1289(A), (B).

2. 32 O.S.1981, §§ 1–3, 10.

3. See, e.g., *Abler v. Abler,* Okl.App. 586 P.2d 761 (1978).

4. This definition appears to be a contradiction in terms or at least vague and confusing, as "conjugal" means "of or relating to marriage, the married state, or married persons in their mutual relations." *Websters Third New International Dictionary.*

stantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. [citation omitted]" *Reed v. Reed,* 404 U.S. 71, 75–76, 30 L.Ed.2d 225, 92 S.Ct. 251, 253–54 (1971). Legislation must be rational, not arbitrary.[5]

The facts of this case bear out the point that the "live in lover" statute is not only unrelated to the purpose of providing alimony, but may, as it is here, be in direct conflict with it. This appellant has a very limited earned income and was shown to be in greater need of support at the time of the modification hearing than she was when the decree was originally entered. Her boyfriend has no obligation to support her and she contends that he does not do so. The only legal relationship between them is that of landlord and tenant. Her otherwise "vested" right in her alimony judgment has been divested by the state solely because she and her boyfriend spent twenty nights together over a period of approximately six months preceding this hearing.

Even in protecting the integrity of public fiscal programs, the government may not inhibit the exercise of constitutional rights or invidiously discriminate against its citizens, e.g., *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *New Jersey Welfare Rights Organization v. Cahill, supra; U.S. Dept. of Agriculture v. Moreno, supra.*

Here, of course, the government is not even protecting the public money, but is impinging on constitutional rights of one individual to the economic benefit of another in private litigation.

Even if the majority's position that the statute is based on need were accepted as true, the classification of cohabiting former spouses could not be sustained. First because the statutory scheme creates a presumption of support by one under no duty to provide it. That presumption cannot be sustained by law or the facts of this case.

Also because to support such a lucid notion of the statute's purpose, it would be necessary to satisfactorily show that sexual activity in a cohabiting relationship represents a sufficiently legitimate, accurate proxy for financial need. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). As in *Orr,* there is no reason here to use sex (here conduct, there gender) as a proxy for the "needy spouse"; the classification is gratuitous. At 282, 99 S.Ct. at 1113.

In fact the section produces perverse results. It is reasonable to assume that only the least financially able group of recipients—those in need of alimony—will be the group to lose benefits because of the provision. They are not able to maintain separate households. Others who are either independently wealthy or supported by a wealthy paramour, may avoid the consequences by living apart. For a similar factual perversity, see, *U.S. Dept. of Agriculture v. Moreno, supra.*

Additionally, this provision does not even make sense in terms of regulating sexual conduct. The most promiscuous recipient may still receive alimony. Only those who cohabit, even for financial necessity, are placed in peril.

If appellant were being supported by her boyfriend—a fact which she denies—how is her need, or lack of it, different from that of the alimony recipient who is being supported by parents, friends or a paramour who can afford to maintain a separate residence? How is her supposed lack of need resulting from this relationship of greater importance to the State of Oklahoma than a real lack of need which another recipient might realize as a result of individual wealth or support from a wealthy paramour with his own home?

The statute arbitrarily places only this classification of recipients in peril while the

5. For state decisions of similar import, see: *Wilson v. Foster,* Okl., 595 P.2d 1329 (1979); *Lindsey v. State, ex rel., Dept. of Corr.,* Okl., 593 P.2d 1088 (1979); *Gordon v. Gordon,* Okl.,
577 P.2d 1271 (1978); *McFall v. City of Shawnee,* Okl., 559 P.2d 433 (1977); *City of Edmond v. Wakefield,* Okl., 537 P.2d 1211 (1975); *Bassett v. Bassett,* Okl.App., 521 P.2d 434 (1974).

ostensible evil is identical but uncorrected for others similarly situated.[6] This is an invidious discrimination void for underinclusion. In *Eisenstadt v. Baird, supra,* the Court set forth the following observation made by Mr. Justice Jackson, concurring in *Railway Express Agency v. New York,* 336 U.S. 106, 112–113, 93 L.Ed. 533, 540, 69 S.Ct. 463, 466–67 (1949), which makes the point:

> "The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation."

The majority scoffs at appellant's argument that the statute penalizes only the recipient of alimony for cohabitation while the payor is not penalized for similar conduct, but the point is well made. Sexual conduct—by either former spouses—has no bearing on the recipient's need for support. See, e.g., *Stanfield v. Stanfield,* 22 Okl. 574, 98 P.2d 334 (1908).

Appellant's analogy has in fact been often used by courts to underscore the absence of relationship between chastity by the recipient and need for support.[7]

This argument has even more validity than appears at first blush, however. It was astutely observed in a recent law review article that § 1289(D) does not limit the cohabitation modification sanctions to cohabitation by the party *receiving* alimony. Under the clear words of the statute, cohabitation by "a former spouse" sets the wheels in motion.[8] A payor "former spouse" may cohabit and claim increased expenses from that relationship have changed his "ability to support" and require terminating or modifying alimony. This benefit would not be available to him if he remarried. So, for the payor spouse his cohabitation can, under the statute, result in his economic benefit. The statute rewards the payor for cohabitation by either former spouse, whereas the recipient is penalized by the cohabitation of either. Some others, in addition to myself, are bound to see this as a problem of fundamental unfairness.

If the state wished to provide for termination or modification of alimony for support when the recipient no longer needs it, it could pass a statute about need rather than sleeping arrangements. Lack of need due to individual wealth or support being furnished by another, could be proved like any other fact without regard to impermissible classifications.

I do not know of any legitimate state purpose served by picking out one group of people with a living arrangement which is lawful but outside the social norm and penalizing them. I therefore Dissent.

I am authorized to state that Justice IRWIN joins with me in this dissent.

---

**6.** Payors are of course placed in categories without a real difference in fact or law also. A payor whose former spouse cohabits is freed by that conduct of future support. While a payor whose ex-spouse is being fully supported by wealthy parents or lover who lives apart, has no remedy.

**7.** See, *Cole v. Cole,* 142 Ill. 19, 31 N.E. 109 (1892); *Bowman v. Bowman,* 163 Neb. 336, 79 N.W.2d 554 (1956); *Daniels v. Daniels,* Id. 351 P.2d 236 (1960); and cases cited therein.

**8.** *Effect of Third Party Cohabitation on Alimony Payments,* 15 Tulsa L.J. 772 (1980).