Gail Page SMITH, Appellant,

v.

John William SMITH, Appellee.

No. 78374.

Court of Appeals of Oklahoma,
Division No. 3.

Oct. 20, 1992.

Rehearing Denied Dec. 15, 1992.

Certiorari Denied March 24, 1993.

Floyd W. Taylor, Oklahoma City, for appellant.

Phillip J. Tucker, Edmond, for appellee.

## OPINION

HANSEN, Vice–Chief Judge:

Appellant seeks review of the trial court's order denying her motion for new trial. In its underlying order, the trial court modified the parties' divorce decree to reduce Appellee's obligation to pay support alimony. We reverse and remand.

The parties entered into an Agreed Decree of Divorce approved by the trial court on April 2, 1990. The decree contained the following support alimony provision:

8. [Husband] is ordered to pay Support Alimony for the use and benefit of [Wife] in the total sum of ... ($180,000.00), payable ... ($2,500.00) per month commencing on March 1, 1990, and continuing on the 1st day of each month thereafter for a period of ... [6 years]

On February 8, 1991, Appellee filed his Motion to Modify Decree of Divorce as to Support. Appellee alleged a material and substantial change of circumstances—that in September, 1990, Appellant began cohabiting with a member of the opposite sex, affecting Appellant's need for support. Appellee asked the court to terminate his support obligation as of the date of the motion.

After a hearing in August 1991, at which only the parties testified, the trial court modified the divorce decree by reducing the ordered support alimony from $2,500.00 to $1,000.00 per month, "effective with the September 1, 1991, payment for the re-

maining term". Among the court's specific findings were:

(B). Plaintiff admits that her cohabitant does not work, has no known income and admits paying his bills, buying his clothes, feeding him, loaning him thousands of dollars and paying the bills and expenses for several out of town trips and paying his credit card charges and has admitted paying his gambling losses at the race track; and

(C). Plaintiff admits that she does not work, has made no attempt to find a job and says that she cannot now live on $2,500.00 per month and that she is now spending money at the rate of $5,800.00 per month, ...

Appellant brought this appeal upon the trial court's denial of her Motion for New Trial. Appellant argues the trial court erred in reducing the support alimony because there is no proof of reduced need on her part as the recipient spouse.

 This Court will not disturb the trial court's decision regarding alimony in the absence of some abuse of discretion, or a finding the decision is clearly against the weight of the evidence. *Wood v. Wood,* 793 P.2d 1372 (Okla.App.1990). Further, unless the judgment is held to be void, alimony may not be modified or vacated without statutory authority. *Roberts v. Roberts,* 657 P.2d 153 (Okla.1983).

The trial court's action was authorized by 43 O.S. Supp.1989 § 134(D) [1], which provides in relevant part:

If voluntary cohabitation is alleged in a motion to modify the payment of support, the court shall have jurisdiction to reduce or terminate future support payments upon proof of substantial change of circumstances of either party to the divorce relating to need for support or ability to support.

However, we find the trial court's conclusion was clearly against the weight of the evidence. Appellant concedes she "cohabited" with a third party, as that term is used in § 134(D). Appellee concedes his ability to support Appellant has not sub-

---

**1.** Renumbered from 12 O.S. § 1289(D) effective November 1, 1989.

stantially lessened. We are then left to inquire only concerning a substantial change in Appellant's need for support.

The terms of the support alimony awarded were the result of an agreement between the parties. Appellee testified he "assumed that her expenses would be approximately the alimony we settled on". Appellee also testified he assumed Appellant would go back to college, and that their son, who was soon to reach the age of majority, would continue to live with Appellant. Appellee acknowledged, however, there was no agreement on these latter factors.

Appellant's testimony essentially comported with the trial court's specific findings set out above, although the findings are somewhat overstated. What the trial court did not note is that Appellant testified *her* fixed monthly debts, and *her* regular monthly expenses, at the time of trial, were substantially the same as at the time of divorce. Appellant also testified her savings account average daily balance had decreased from $37,921.75 at the time of divorce to $17,399.00 at the time of trial.

The Oklahoma Supreme Court has held that the *"raison d'etre* of [43 O.S. Supp. 1989 § 134(D)] is not to regulate morality, but rather to regulate support maintenance when the *need* for continued support has diminished or vanished". *Roberts v. Roberts,* 657 P.2d at 154. (emphasis in original). Oklahoma has not, however, adopted a test for determining when a substantial change in that need has occurred for the purposes of § 134(D).

We find most persuasive the rule in the oft-cited opinion of the Appellate Division, Superior Court of New Jersey, *Garlinger v. Garlinger,* 137 N.J.Super. 56, 347 A.2d 799 (1975). The Court there stated:

> If it is shown that the wife is being supported in whole or in part by the paramour, the former husband may come into court for a determination of whether the alimony should be terminated or reduced. Similarly, if the paramour resides in the wife's home without contributing anything toward the purchase of food or the payment of normal household

bills, then there may be a reasonable inference that the wife's alimony is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly.

*Garlinger v. Garlinger,* 347 A.2d at 803.

The *Garlinger* economic rationale has been suggested as the most appropriate for the Oklahoma cohabitation statute because it would limit the court's consideration to the economic consequences of the alimony recipient's cohabitation. *The Effect of Third Party Cohabitation on Alimony Payments,* 15 Tulsa L. Journal 772 (1980).

Also, while the *Garlinger* rule has not been precedentially adopted here, it has been discussed analogously by our Supreme Court. See, *Allgood v. Allgood,* 626 P.2d 1323 (Okla.1981); *Roberts v. Roberts,* 657 P.2d at 157. (Opala, J. concurring opinion, footnote 8).

Notwithstanding our acceptance of the *Garlinger* rule, we find the matter before us distinguishable in fact from *Garlinger.* In *Garlinger* support alimony payments were suspended for the two months of cohabitation where the court found the paramour contributed nothing toward the cost of food or household expenses. There the court found "it is evident that a part of the alimony payments received by Mrs. Garlinger necessarily inured to the benefit of her friend".

In the present case, there is no showing any of the alimony inured to the benefit of Mrs. Smith's cohabitant. To the contrary, the evidence reflected not only that Mrs. Smith's own expenses were substantially the same as at the time of divorce, but that she had been spending a similar amount from her savings in support of her cohabitant. There is no proof that Mrs. Smith's need for the alimony support has been substantially diminished.

The trial court's order modifying the divorce decree was against the clear weight of the evidence. Its denial of Appellant's Motion for New Trial was therefore an abuse of discretion, and it is accordingly REVERSED. This matter is REMANDED

to the trial court for entry of an order consistent with this opinion.

BAILEY, P.J., and HUNTER, J. concur.