1999 OK 65

**Orlan V. WILSON, Plaintiff/Appellant,**

v.

**Lucretia G. WILSON, Defendant/Appellee.**

**No. 88,243.**

Supreme Court of Oklahoma.

July 6, 1999.

---

Melissa DeLacerda, Stillwater, Oklahoma, for Appellant.

C.D. Curtis and John W. McCue II, Fairview, Oklahoma, for Appellee.

LAVENDER, J.

¶ 1 Central to resolution of today's cause is what effect is to be accorded cohabitation in a trial court's deliberations concerning modification of earlier awarded support alimony.

I

## FACTS AND PROCEDURAL HISTORY

¶ 2 Orlan and Lacretia Wilson[1] were divorced in 1990. Their divorce decree provid-

---

1. We note that in the caption of Orlan's petition in error Lacretia Wilson's name is spelled "Lu-

cretia." The caption will stand unchanged although the record demonstrates at p. 137 that

ed that Lacretia was to receive $186,000 in support alimony payable in 120 monthly payments of $1400 each commencing September 1, 1990 and thereafter at $500 per month for 35 months. Orlan [movant] moved to modify the support-alimony award on September 15, 1996 alleging as a basis for the requested amendment Lacretia's cohabitation with a man. At trial evidence was also adduced about Lacretia's general economic resources [2] and needs. After finding that Lacretia was cohabiting with a person of the opposite sex, the trial court considered only the cohabitation's economic impact on Lacretia's financial needs to reach its decision on the merits of the parties' motion. By order—dated August 14, 1996 but filed September 12, 1996—the trial court denied Orlan's motion to modify and further denied Lacretia's motion to increase her support alimony. On October 8, 1996 Orlan appealed. By its December 31, 1997 opinion the Court of Civil Appeals [COCA] reversed the trial court's ruling, held

that Lacretia's entire financial status was subject to re-evaluation in determining her need for support alimony, and reduced the amount of support alimony due her by the amount of gifts which she had earlier received from her mother. Lacretia sought certiorari which was granted.

## II

### THE STANDARD OF REVIEW

■ ¶3 An award of support alimony and hence its modification are matters of equitable cognizance.[3] Hence, the trial court's findings are presumed to be correct and a judgment based on the same will not be set aside unless against the clear weight of the evidence.[4] To the extent that the construction of 43 O.S.1991 § 134 C[5] & D[6] and the scope of the mandatory statutory review of the supported spouse's economic circumstances are in question, an issue of law is presented which is reviewable by a de novo standard.[7] An appellate court retains plena-

Ms. Wilson's name is correctly spelled "Lacretia."

2. During the hearing on the motion to modify Lacretia testified that she received $20,000 gifts from her mother in 1994, 1995 and 1996. Tr. trans. pp. 62–64. She also testified that she did not expect to receive the same in 1997. Tr. trans. p. 118.

3. *See Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500, 507; *Branson v. Branson*, 190 Okla. 347, 123 P.2d 643, 647 (1942). There is no fixed rule by which an amount of alimony can be determined. Because an award of support alimony is equitable in nature, a specific test for measuring a spouse's financial needs is not prescribed today. Nonetheless, such factors as the estates, earnings, earning capacity, health and physical condition, and accustomed standard of living of the parties as well as other factors which are particular to the case would be appropriate considerations.

4. *Evans v. Neal*, 198 Okla. 515, 180 P.2d 661, 662 syl.1 (Okla.1947); *Marshall v. Marshall*, 364 P.2d 891, 895 (Okla.1961); *Archer v. Archer*, 1991 OK CIV APP 28, 813 P.2d 1059, 1062 (approved for publication by the Supreme Court).

5. *See* 43 O.S.1991 § 134 C., whose pertinent terms provide:

C. The voluntary cohabitation of a former spouse with a member of the opposite sex shall be a ground to modify provisions of a final judgment or order for alimony as support. If voluntary cohabitation is alleged in a motion to modify the payment of support, the court *shall have jurisdiction* to reduce or terminate future support payments upon proof of *substantial change of circumstances of either party to the divorce relating to need for support* or ability to support.... [Emphasis added.]

*See also Roberts v. Roberts*, 1983 OK 1, 657 P.2d 153, 155, where the Court held that a trial court has no power to increase or diminish an earlier awarded support-alimony allowance sans statutory authority.

6. *See* 43 O.S.1991 § 134 D., whose pertinent terms provide:

D. Except as otherwise provided in subsection C of this section, the provisions of any divorce decree pertaining to the payment of alimony as support may be modified upon proof of changed circumstances relating to the need for support or ability to support which are *substantial and continuing* so as to make the terms of the decree unreasonable to either party.... Such modification shall only have *prospective* application.

7. *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, 859 P.2d 1081, 1084.

ry, independent and non-deferential authority to re-examine a trial court's legal rulings.[8]

## III

### THE EVIDENCE ADDUCED AND THE LEGAL ARGUMENTS PRESSED BY ORLAN AT TRIAL IMPLICATE THE TERMS OF BOTH SUB PARTS C AND D OF 43 O.S.1991 § 134; TO AVOID AMBIGUITY AND DUPLICITY THESE PROVISIONS MUST BE CONSTRUED IN PARI MATERIA.

¶ 4    Title 43 O.S.1991 § 134 C—the statutory provision allowing reduction or termination of support alimony upon proof of cohabitation—was first enacted in 1979.[9]  A later section (43 O.S.1991 § 134 D) which provides for amendment of a support-alimony award upon proof of a *substantial and continuing* change in the parties' financial circumstances was added by statute effective November 1, 1983.[10]   Today's pronouncement addresses the proper scope of a trial court's inquiry when deciding whether to modify earlier awarded support alimony under either or both sections.   Although evidence was adduced and arguments pressed by Orlan at trial that addressed changes in Lacretia's resources which were attributable *not only to cohabitation* but also to her mother's largesse,[11] the parties suggested to the trial court that the only applicable statute was 43 O.S.1991 § 134 C.   The ensuing result was that the trial court—in its ruling on Orlan's motion to modify—limited the scope of its review to the economic impact of the established cohabitation on Lacretia's needs and did not proceed to the broader issue whether a "substantial and continuing" change [as required by the terms of 43 O.S. 1991 § 134 D] had occurred in Lacretia's

resources.   Nonetheless, modification of the earlier awarded support alimony—on the bases urged by Orlan—implicates both statutory sub parts.

## A

¶ 5   Fundamental to all statutory construction is ascertainment of legislative intent and purpose as expressed in the act's language.[12]   This process requires that "relevant provisions must be considered together, where possible, to give force and effect to each other." [13]   By invocation of a selected statutory provision [43 O.S.1991 § 134 C] out of context, rather than in conjunction with in pari materia [14] legislative text [43 O.S.1991 § 134 D], the trial court introduced discord between two sub parts of the same statute. The manner in which the trial court summarily dismissed the adduced evidence's probative effect when it failed to consider enhancement of Lacretia's resources through gifts from her mother rendered § 134 D inefficacious.   Orlan's suggestion that the scope of review demanded by § 134 C echoes that called for by the terms of § 134 D would achieve the same impermissible result.   Extant jurisprudence requires that the two sub parts be construed to give each independent meaning, not making one sub part's directive a mirror image, and hence unnecessary statutory duplicate, of the other.[15]

## B

¶ 6   Support alimony, as defined by Oklahoma's extant jurisprudence and as reflected in Title 43 O.S.1991 § 134, is a need-based concept.[16]   The trial court—that entered the judgment which awarded period-

---

**8.**  *Id.* at 1084, *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**9.**  *See* 1979 Okla. Sess. Law, ch. 278, § 1, effective October 1, 1979.

**10.**  *See* 1983 Okla. Sess. Law, ch. 86, § 1, effective November 1, 1983.

**11.**  *See supra* note 2.

**12.**  *Knight v. Ford,* 1994 OK 74, 877 P.2d 602, 604.

**13.**  *Ledbetter v. Okla. Alcoholic Bev. Laws Enforcement Com'n.,* 1988 OK 117, 764 P.2d 172, 179.

**14.**  For a discussion of when statutory provisions should be construed "in pari materia" see *Kimes v. L.W. Bechtold,* 176 W.Va. 182, 342 S.E.2d 147, 150–51 (1986).

**15.**  *Eason Oil Co. v. Corp. Com'n,* 1975 OK 14, 535 P.2d 283, 286; *Bd. of Com'rs of Creek County v. Alexander,* 58 Okla. 128, 159 P. 311, 315 (Okla. 1916).

**16.**  *Johnson v. Johnson,* 1983 OK 117, 674 P.2d 539, 546;

ic alimony payments—retains jurisdiction to consider post judgment motions for its modification.[17] Although the trial court is endowed with *jurisdiction* to modify its earlier-entered support-alimony awards, it is only after finding that either (a) cohabitation exists between a recipient spouse and a person of the opposite sex [§ 134 C [18]] or (b) a suggestion is made by way of motion that a *"substantial and continuing"* change has occurred in the parties' economic circumstances [§ 134 D [19]] that the court is vested with statutory *authority* (1) to inquire into the parties' [divorced spouses] financial affairs—i.e., their needs and ability to pay—and (2) to modify its earlier award.[20] While the adopted statutory scheme vests authority in the trial court to modify its earlier support-alimony award, the sub part (§ 134 C) which addresses cohabitation does not specify *an identifiable consequence* of a supported spouse's cohabitation *other than* authorization to inquire into its economic impact on the need for spousal support.

■ ■ ¶ 7 In assessing the two sub parts' application to the cause before us we are mindful that each must be construed in a way which renders each independently viable and meaningful. The terms of § 134 C evince a legislative understanding that a supported spouse's cohabitation with a member of the opposite sex has the potential to affect the supported spouse's need for economic assistance. Hence, the statutory provision's focus is limited to cohabitation's impact on the recipient spouse's economic needs. An overarching consideration in the economic analysis required by the statute is that the supported spouse not be punished because of cohabitation.[21] Oklahoma's extant jurisdiction has long recognized that:

After the divorce the parties go into the world as strangers to each other, and generally even the adultery [sic] of the wife . . . will not relieve the husband of the payment of alimony in accordance with the decree. *Stanfield v. Stanfield,* 22 Okla. 574, 98 P. 334, 339 (1908).

The finding of a non-spousal menage simply authorizes an inquiry into the recipient spouse's *then* financial circumstances.[22] The probe demanded by the terms of § 134 C is a review of (a) the totality of the supported spouse's economic circumstances (when the original award was entered) as impacted by (b) the economic effect of the recipient's cohabitation with a person of the opposite sex. Here, the trial court properly limited the scope of its § 134 C review. Its finding that Lacretia's cohabitation did not *substantially* affect her financial circumstances is not clearly against the weight of the evidence and its judgment is sustained to the extent that modification was not required because of her cohabitation.

■ ■ ¶ 8 Because evidence was introduced establishing that Lacretia had received substantial gifts [23] from her mother, the terms of § 134 D [24] are implicated. By evidence adduced and arguments pressed below Orlan suggests that Lacretia's resources were enhanced in a substantial and continuing manner by the receipt of these monies. The scope of the financial review required when a motion for modification implicates § 134 D is much broader than that mandated by the terms of § 134 C. Whether modification is appropriate under the latter sub part requires the trial court to examine the supported spouse's financial needs as juxtaposed against his/her ability to fulfil

---

**17.** *See* 43 O.S.1991 § 134 C which provides in pertinent part that "[t]he court that entered the divorce decree shall have jurisdiction over the modification application."

**18.** *See supra* note 5, for the terms of § 134 C.

**19.** *See supra* note 6, for the terms of § 134 D.

**20.** *Roberts, supra* note 5 at 155; *Thielenhaus v. Thielenhaus,* 1999 OK CIV APP 7, 978 P.2d 369 Before the enactment of 43 O.S.1991 § 134 C & D, support alimony was subject to termination *only* upon the recipient spouse's death or remarriage. *Id.* at 159 (Opala, J., concurring).

**21.** *See Roberts, supra* note 5 at 154, where the Court held that the purpose of 43 O.S. Supp. 1989 § 134 D [now 43 O.S.1991 § 134 C] "is not to regulate morality, but rather to regulate support maintenance when the need for continued support has diminished or vanished."

**22.** *See Garlinger v. Garlinger,* 137 N.J.Super. 56, 347 A.2d 799, 803 (1975)

**23.** *See supra* note 2 for a description of the gifts.

**24.** For the terms of 43 O.S.1991 § 134 D see *supra* note 3.

them. This process necessarily requires examination of *all* the recipient spouse's sources of income. Here, the logic of the New Mexico Supreme Court in *Brister v. Brister*, 92 N.M. 711, 594 P.2d 1167 (1979), is persuasive. There it held: "Actual need being the criterion, what matters if the money comes from an inheritance, a crap game or the largess of a live-in lover." *Id.* at 1170. The base issue is the supported spouse's temporary sustenance after the marriage's failure. The party seeking modification [here Orlan] bears the burden of proving that a *substantial and continuing* improvement has occurred in the resources *available to meet the supported spouse's financial needs.*

¶ 9   As to sums received by way of gift and actually available to assist Lacretia in meeting her financial needs, she would have the Court consider only the income stream which these funds are capable of generating through investment and not require her to invade the corpus of the same. We view her suggestion as too restrictive. Support alimony is need based and hence to the extent the supported spouse has monies available—regardless of their source—to meet needs, he/she is obliged to use them.[25]

¶ 10   The trial court in its assessment of the gifts as a current source of income to Lacretia must determine if the gifted sums are available—*at the time the motion to modify is filed* – to meet Lacretia's financial needs. *If they are not,* Oklahoma's extant jurisprudence requires that they *not* be used to reduce or modify future support alimony payments.[26] Modification is appropriate only when the change in the recipient's resources [suggested by the movant] is substantial *and continuing,* i.e., is available to meet economic needs for periods later than the time when the § 134 D motion is filed. Oklahoma's extant jurisprudence does not sanction the retroactive modification

of periodic alimony which has already been paid.[27]

## IV

### SUMMARY

¶ 11   Today's pronouncement prescribes the scope of review (implicated by sub parts "C" and "D" of 43 O.S.1991 § 134) that a trial court must undertake when ruling upon a motion to modify earlier awarded support alimony. Had the parties raised only the issue of cohabitation and its economic effect upon Lacretia's resources and needs the matter would be concluded. Nonetheless, it must be remanded to the district court for further proceedings because Orlan suggested "substantial and continuing" changes had occurred in Lacretia's resources due to non-recurring gifts which she had received from her mother. Under the facts adduced the trial court must make additional factual findings concerning the availability of these funds as of the time the motion to modify was brought.

¶ 12   Upon certiorari previously granted.

**THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE DISTRICT COURT'S DECISION IS REVERSED; AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.**

¶ 13   SUMMERS, C.J., HODGES, LAVENDER, OPALA, and ALMA WILSON, JJ., concur.

¶ 14   HARGRAVE, V.C.J. and WATT, J., concur in result.

¶ 15   SIMMS and KAUGER, JJ., concur in part; dissent in part.

---

25.   *See Brister v. Brister*, 92 N.M. 711, 594 P.2d 1167 (1979); *Lemm v. Lemm*, 72 Wis.2d 457, 241 N.W.2d 593, 595 (1976).

26.   *Thielenhaus, supra* note 20 at 7, fn. 1, which holds that modification shall only have prospective application.

27.   Were the Court today to permit an offset to Orlan's obligation for support alimony for those

sums which Lacretia had received from her mother and had spent and hence were not available to meet her financial needs when the motion to modify was filed, we would in effect be opening to inquiry Lacretia's economic needs for times which predate Orlan's quest for modification. This process is not sanctioned by the terms of 43 O.S.1991 § 134 C & D.

SIMMS, J., concurring in part, dissenting in part:

¶ 1   I must respectfully dissent from the majority's decision insofar as it remands this matter to the trial court for further proceedings under 43 O.S.1991, § 134 D.   I would affirm the trial court's award of support alimony and denial of Orlan's motion to modify the award based on its finding that § 134 C, under which Orlan brought his motion, was the only applicable statute and he did not prove his case.   These statutory subsections, C and D of § 134, are, as the majority points out, separate and independent.   I believe that if they are they are not kept so, confusion and perhaps mischief will result as this case illustrates.   This motion to modify was brought under the explicit provisions of § 134 C and the parties and the trial court considered that to be the only applicable statute.   In my opinion, the scope of that hearing did not change because Lacretia was forthcoming and revealed her whole financial status when asked.

I am authorized to state that Justice KAUGER joins with the views expressed herein.